IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

| | |
|---|---|
| **SUSANNAH SNOH-GBALAY** | Case No. |
| Plaintiff, | |
| vs | **COMPLAINT FOR DAMAGES** |
| **HABITAT FOR HUMANITY OF CHESTER COUNTY, INC.** | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | |

Plaintiff Susannah Snoh-Gbalay, through counsel, states as follows for her Complaint against Defendant Habitat for Humanity of Chester County, Inc.:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Susannah Snoh-Gbalay ("Plaintiff" or "Snoh-Gbalay") was the owner of residential real property, located at and commonly known as 19 Parkway Avenue, Lot #8, South Coatesville, Pennsylvania 19320 (the "Home"), which she occupied as her primary, principal residence for all times relevant to this Complaint until the sale of the Home.

2. Defendant Habitat for Humanity of Chester County, Inc. ("Defendant" or "Habitat") was the creditor and servicer of a note executed by Snoh-Gbalay (the "Note") and of a mortgage on the Home that secured said note (the "Mortgage") (collectively, the "Loan") at all times relevant to this Complaint until the sale of the Home. *See*, a copy of the Loan, attached as **Exhibit 1**.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises primarily under the Truth in Lending Act, 12 U.S.C. §§ 1601, *et seq*. ("TILA").

4. This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

6. This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1026.1, *et seq.* ("Regulation Z").

7. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

8. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) and the Mortgage servicing Rules Under the Truth in Lending Act, 78 F.R. 10901 (February 14, 2013) (Regulation Z), which became effective on January 10, 2014.

9. TILA provides that a creditor or servicer of a home loan shall provide an *accurate* payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

10. Through Regulation Z, the CFPB has provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

11. Regarding payoff statements, Regulation Z provides that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

12. The Loan is a closed-end consumer credit transaction secured by their respective dwellings as contemplated by TILA and Regulation Z. 15 U.S.C. § 1602; 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

13. Habitat is the creditor of the Loan as defined and contemplated by TILA and Regulation Z.

14. Snoh-Gbalay asserts claims for relief against Habitat for violations of the specific rules under Regulation Z, as set forth, *infra*.

15. Snoh-Gbalay has a private right action under TILA pursuant to 15 U.S.C. § 1640(a) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## STATEMENT OF FACTS

16. On or about April 19, 2017, Snoh-Gbalay filed a petition for bankruptcy protection under Title 11, Chapter 13 of the United States Bankruptcy Code, in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania, Case No. 17-12720-mdc (the "Bankruptcy").

17. Habitat filed a proof of claim in the Bankruptcy on or about August 18, 2017 (the "POC").

18. On or about October 16, 2017, Snoh-Gbalay filed an objection to the POC.

19. Snoh-Gbalay and Habitat (collectively, the "Parties") subsequently settled the objection to the POC and the Bankruptcy court was notified of the same at a hearing conducted on or about January 9, 2018.

20. Specifically, as part of such settlement, Habitat filed an amended proof of claim in the Bankruptcy (the "APOC"). *See,* a copy of the APOC, attached as **Exhibit 2**.

21. As evidenced by the APOC, the Parties entered into an agreement whereby Habitat "will reduce its claim for pre-petition legal fees…from $10,712.19 to $5,712.19" and that Snoh-Gbalay would "not object that the balance owed by [Snoh-Gbalay] to Habitat pursuant to [the Loan] is $43,848.82." *See*, *inter alia*, Exhibit 2 at p. 4.

22. Snoh-Gbalay's plan in the Bankruptcy was confirmed on or about March 28, 2018.

23. At no point in time did Habitat seek permission to impose or otherwise provide notice of any attorneys fees after initiation of the Bankruptcy.

24. Snoh-Gbalay sought to sell the Home and requested a payoff statement for the Loan from Habitat.

25. Snoh-Gbalay sought to voluntarily dismiss the Bankruptcy and a dismissal order was issued on or about August 26, 2021.

26. On or about September 16, 2021, Habitat provided a payoff statement for the Loan claiming that the amount to pay the Loan in full was $39,662.35 (the "Payoff"). *See*, a copy of the Payoff, attached as **Exhibit 3**.

27. Per the Bankruptcy Trustee's Final Report and Account (the "Report"), the Trustee disbursed $12,687.45 to Habitat through the course of the Bankruptcy.

28. As per the agreement in the APOC, the total amount due as of the APOC was $43,848.82, and the Trustee disbursed $12,687.45 to Habitat through the course of the Bankruptcy, the amount to payoff the Loan as of the date of the Payoff should have been approximately, $31,161.37.

29. On information and belief, the reason for the difference between the expected payoff amount of $31,161.37 and the amount claimed in the Payoff of $39,662.35, is that Habitat disregarded the agreement contained in the APOC and attempted to improperly collect upon and demand full payment of any remaining portion of the original pre-petition legal fee balance of $10,712.19.

30. Regardless of the terms of the APOC, the Note expressly provides that while Habitat has the right to make Snoh-Gbalay pay for costs and expenses necessary to collect the Note in the event of a default, attorney's fees for such amounts would be comprised of "fifteen per centum (15%) of the unpaid principal sum and interest."

31. As the unpaid principal and interest of the Note should have been, at most, $31,161.37, any attorneys fees collectible under the terms of the Note would have been capped at a maximum of $4,674.21, far less than the believed amount that Habitat claimed due and owing on the Loan. [1]

---

[1] The original balance of the Loan was $66,479.91, meaning that even if Snoh-Gbalay did not ever remit a single payment on the Loan, at most the Note would have permitted $9,971.99 for attorneys fees—that is, fifteen percent (15%) of $66,479.91—yet Habitat demanded more than such amounts during the Bankruptcy, as evidenced by the POC and APOC, as well as, upon information and belief, after the dismissal of the Bankruptcy.

32. The sale of the Home closed on or about October 13, 2021 with Snoh-Gbalay remitting payment to Habitat in the amount of $39,662.35, the amount claimed through the Payoff.

33. Snoh-Gbalay, however, expressly remitted the Payoff funds to Habitat under protest and reserving the right to further protest the amounts claimed due and owing and paid in furtherance of the Payoff. *See*, correspondence from counsel for Snoh-Gbalay dated October 12, 2021, attached as **Exhibit 4**.

34. By remitting the $39,662.35 to Habitat, Snoh-Gbalay suffered an ascertainable loss of at least $8,500.98 as a direct result of Habitat's unfair methods of competition and unfair or deceptive acts or practices related to the miscalculations of the payoff amount described above.

## DAMAGES INCURRED BY AND IMPACT UPON SNOH-GBALAY

35. Habitat's improper actions caused Snoh-Gbalay to suffer from actual and proximate damages including:

   a. Payment of up to approximately $8,500.98 in funds to Habitat upon the sale of the Home which were not warranted and the loss of use of such funds as well as the time loss of such funds;

   b. Legal fees and expenses to her counsel to dispute the amounts claimed due and owing through the Payoff and to ensure that that the funds in satisfaction of the Payoff were remitted to under protest;

   c. Severe emotional distress driven by fear that Snoh-Gbalay would be unable to sell the Home as desired unless she paid for fees and amounts that are not properly due and owing and are not otherwise warranted which resulted in frustration, loss

of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## COUNT I:
## VIOLATIONS OF 15 U.S.C. § 1639g AND 12 C.F.R. § 1026.36(c)(3)

36. Snoh-Gbalay repeats and realleges paragraphs 1 through 35 with the same force and effect as though fully set forth herein.

37. Snoh-Gbalay submitted a request for a payoff statement of the Loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) in or around September 2021.

38. In response to Snoh-Gbalay's request for a payoff statement Habitat failed to provide an *accurate* payoff statement through the Payoff as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3)—because the payoff balance stated through the Payoff included impermissible and unwarranted attorneys fees. *See*, Exhibits 1 through 4.

39. Snoh-Gbalay was harmed as a result of Habitat's actions as further discussed *supra*, including, but not limited to, the loss of use of and the time loss of up to $8,500.98 in funds as well as legal fees and costs incurred with disputing the Payoff and ensuring the Snoh-Gbalay's payoff of the Loan was under protest, none of which would have been necessary but for Habitat's failure to provide accurate payoff statements.

40. As a result of Habitat's actions Habitat is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. §§ 1640(a)(1)-(3); 15 U.S.C. § 1641.

## COUNT TWO:
## BREACH OF CONTRACT

41. Snoh-Gbalay repeats and realleges paragraphs 1 through 34 with the same force and effect as though fully set forth herein.

42. The Loan is a contract between the Parties. *See*, Exhibit 1.

43. Habitat breached the contract by demanding, collecting, and accepting amounts in the payoff and satisfaction of the Loan which were impermissible or otherwise unwarranted per the terms of the Note or otherwise under the terms of the Parties' agreement reduced to writing in the APOC and otherwise in resolution of the objection to the POC.

44. Habitat breached the contract in bad faith as evidenced by their refusal to correct its breach despite being put on notice of the same through the objections of Snoh-Gbalay to the Payoff through her counsel.

45. Snoh-Gbalay was harmed as a result of Habitat's actions as further discussed *supra*, including, but not limited to, the loss of use of and the time loss of up to $8,500.98 in funds as well as legal fees and costs incurred with disputing the Payoff and ensuring the Snoh-Gbalay's payoff of the Loan was under protest, none of which would have been necessary but for Habitat's breach of the contract.

46. As a result of its actions, Habitat is liable to Snoh-Gbalay for actual damages as further alleged, *supra*, as well as reasonable attorneys' fees and costs.

## COUNT THREE:
## VIOLATIONS OF PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT
**(73 Pa. C.S. § 2270.1, *et seq.*)**

47. Snoh-Gbalay repeats and realleges paragraphs 1 through 46 with the same force and effect as though fully set forth herein.

48. Snoh-Gbalay is a consumer as defined by the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), the Loan is a debt as defined by the FCEUA, and Habitat is a creditor as defined by the FCEUA. 73 P.S. § 2270.3.

49. Based on the allegations herein, Habitat violated FCEUA, 73 P.S. § 2270.4(b)(5)(ii), prohibiting a creditor from using any false, deceptive or misleading representation or means in

connection with the collection of any debt by disregarding the terms of the APOC agreement and attempting to collect a debt in excess of the express provisions of the Note.

50. Based on the allegations herein, Habitat has also violated FCEUA, 73 P.S. § 2270.4(b)(6)(i), prohibiting a creditor from using unfair or unconscionable means to collect or attempt to collect any debt by collecting an amount not expressly authorized by the agreement creating the debt or permitted by law.

51. Habitat's use of deceptive practices prohibited by the FCEUA also constitute violations of the Pennsylvania Unfair Trade Consumer Protection Law (UTPCPL), 73 P.S. § 2270.5(a).

52. As alleged above Snoh-Gbalay has lost money as a direct result of Habitat's actions and is therefore entitled to actual damages, statutory damages, treble damages and attorneys' fees and costs under 73 P.S. § 201-9.2.

## COUNT FOUR:
## VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE CONSUMER PROTECTION LAW
## ("UTPCPL"), 73 Pa. C.S. § 201-1, et. seq.

53. Snoh-Gbalay repeats and realleges paragraphs 1 through 52 with the same force and effect as though fully set forth herein.

54. Snoh-Gbalay and Habitat are each persons as defined by the UTPCPL, the Loan arose from the purchase of goods primarily for personal, family or household purposes as defined by the UTPCPL, and Habitat's actions and practices described herein were conduct as part of trade or commerce under the UTPCPL. 73 P.S. §§ 201-2(2)-(3); 201-9.2.

55. Habitat violated the UTPCPL, because, pursuant to FCEUA, 73 P.S. § 2270.5(a), any unfair or deceptive debt collection act or practice under the FCEUA by a debt collector or creditor, as set forth above, constitutes a violation of the UTPCPL.

Case 2:21-cv-05614-BMS   Document 1   Filed 12/24/21   Page 10 of 11

56. Other unfair or deceptive acts or practices defined as such in 73 P.S. §201-2(4) committed by Habitat include, but are not limited to, the following:

   a. Habitat engaged in fraudulent or deceptive conduct which would create the likelihood of confusion or of misunderstanding. 73 P.S. §201-2(4)(xxi).

57. Habitat's actions described in Paragraphs 55 and 56, *supra*, are unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of 73 P.S. § 201-3.

58. Habitat's actions described in Paragraphs 54 and 55 above are fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding which constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of 73 P.S. § 201-2(4)(xxi).

59. As alleged above Snoh-Gbalay has lost money as a direct result of Habitat's actions and is therefore entitled to actual damages, statutory damages, treble damages and attorneys' fees and costs under 73 P.S. § 201-9.2.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Susannah Snoh-Gbalay prays that this Court grant judgment against Defendant Habitat for Humanity of Chester County, Inc. and award her the following:

   A. Actual damages from Defendant Habitat for Humanity of Chester County, Inc. of at least $8,500.98 and in an amount to be determined at trial for the allegations contained in Counts One, Two, Three, and/or Four;

   B. An award of statutory damages of Four Thousand Dollars ($4,000.00) from Defendant Habitat for Humanity of Chester County, Inc. for the violation of TILA and Regulation Z contained in Count One;

   C. For an award of statutory damages, as applicable, from Defendant Habitat for

*Snoh-Gbalay v. Habitat for Humanity of Chester County, Inc..*
Complaint for Damages: Page 10

Humanity of Chester County, Inc. for the violations of the FCEUA and/or UTPCPL for the allegations contained in Counts Three and/or Four;

D. For an award of treble damages, as applicable, from Defendant Habitat for Humanity of Chester County, Inc. for the violations of the FCEUA and/or UTPCPL for the allegations contained in Counts Three and/or Four;

E. For an award of attorneys' fees and costs from Defendant Habitat for Humanity of Chester County, Inc. for the allegations contained in Counts One, Three, and/or Count Four; and

F. For such other relief which this Court may deem appropriate.

## JURY DEMAND

Plaintiff Susannah Snoh-Gbalay hereby respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

BY: /s/ Stephen M. Dunne
Stephen M. Dunne, Esquire
PA Attorney ID: 208838
1515 Market Street, Suite. 1200
Philadelphia, PA 19102
(215) 551-7109 Phone
Email: stephen@dunnelawoffices.com
*Counsel for Plaintiff Susannah Snoh-Gbalay*

Brian D. Flick
Ohio Bar No. 0081605
(*pro hac vice* anticipated)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
Cleveland, OH 44103
Telephone: (216) 373-0539
notices@dannlaw.com
*Counsel for Plaintiff Susannah Snoh-Gbalay*